Staub vs. Van Benthuysen.

## No. 9089.

### CHARLES E. STAUB vs. W. VAN BENTHUYSEN.

A libel is any publication whether in writing, print, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.

Publication is the communication of the libel or defamatory matter to a third person.

Every sale or delivery of a written or printed copy of a libel is a fresh publication, and every person who sells a written or printed copy of it may be sued therefor, and the onus of proving that he was ignorant of its contents is on the defendant. In giving currency to slanderous and libellous reports and publications, a party is as much responsible criminally and civilly as if he had originated the defamation. His only defence to a civil suit is to shew the truth of the charges preferred, while in a criminal prosecution not only must the truth be proved, but that the truth was published for good motives and for justifiable ends.

The word 'malice' in such cases does not imply, much less mean, ill will or personal malice. Malice is an imputation of the law from the false and slanderous nature of the charge. Legal malice need not be proved. Actual malice may be proved to enhance the damages

Any publication which is false and defamatory subjects the publisher and the seller to damages in favour of the party aggrieved, and it is not incumbent upon him to prove that he has been injured by the publication.

The discharge of one who has been prosecuted for libel does not prove want of probable cause for the prosecution, nor malice in the prosecutor.

APPEAL from the Civil District Court for the Parish of Orleans. Monroe, J.

*Hunt & Lavillebeuvre* for Plaintiff and Appellant.

*John M. Bonner* and *E. H. Farrar* for Defendant and Appellee.

The opinion of the Court was delivered by

MANNING, J. This suit is for the recovery of five thousand dollars as damages for a malicious prosecution. The defendant made affidavit before one of the recorders of the City that the plaintiff had wilfully and maliciously defamed him by publishing, selling, and distributing a newspaper called 'The Mascot,' tending to provoke him to wrath and expose him to contempt and ridicule. The plaintiff, having been arrested under this affidavit, was discharged by the Recorder on the ground that the publication was not malicious.

The allegations are that the plaintiff is a clerk (salesman) in the book store and news stand of W. F. Goldthwaite, where all the local newspapers and the principal ones from other cities are constantly sold, and among them the 'Mascot'—that he did not sell the particular number of that paper complained of himself, nor cause it to be sold and distributed as charged, and if it was sold at that stand that the

plaintiff was not responsible therefor, and the arrest and prosecution of him was malicious and without probable cause.

The answer repels the assertion of malice, and avers that the defendant in making the affidavit acted in good faith and on the advice of experienced counsel, and that there was probable cause, for at the time of the plaintiff's arrest he was selling and distributing the Mascot of date April 22, 1882, which contained a gross and defamatory libel of the defendant, a copy of which is appended. It is further averred that the plaintiff in divers ways and at sundry times has held himself out to the community as the owner and manager of the news-stand, and is in fact such owner and manager, and that he did wantonly and maliciously sell and circulate the number of the newspaper above mentioned, causing damage to the defendant in the sum of ten thousand dollars for which judgment is prayed.

The verdict of the jury did not sanction either claim. The plaintiff took nothing by his suit—the defendant nothing by his reconventional demand.

The proof is entirely satisfactory that the plaintiff is part owner and sole manager of the news-stand. Goldthwaite owns the book-store in which Staub is a salesman at a fixed salary. Staub equally shares the profits with Goldthwaite of the news-stand appendant to the book-store, and entirely manages it. He has advertised himself as sole proprietor of the news-stand for seven years in the City Directory and in the newspapers, and has written laudatory notices of " Staub's news-stand" which he had inserted in the newspapers. The public know it as Staub's, and the public so know it from Staub's representations.

There is no dispute of the fact that the newspaper in question was sold at that news-stand. Staub denies that he sold the particular copy which was introduced in evidence. The fact was that copy was delivered by a boy about the stand.

The affidavit and arrest were made on April 29 th.., one week after the date of the publication. In this interval the defendant had taken legal advice. Counsel informed him that the publication was libellous and the seller was liable to imprisonment and fine, and that an affidavit should be made as the basis of a criminal prosecution. It was accordingly made.

A libel is any publication whether in writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to

be shunned or avoided, or which has a tendency to injure him in his occupation. Odgers on Libel and Slander. 7, 20.

Publication is the communication of the libel or defamatory matter to a third person. Every one who prints or publishes a libel may be sued by the party defamed, and to such action it is no defence that another wrote it, or that it was printed or published by the desire or procurement of another. Every sale or delivery of a written or printed copy of a libel is a fresh publication, and every person who sells a written or printed copy of it may be sued therefor, and the onus of proving that he was ignorant of its contents is on the defendant. Ibid. 155, 159. The same rules apply to a criminal prosecution for libel as to a civil suit for damages by reason thereof. In giving currency to slanderous and libellous reports and publications, a party is as much responsible criminally and civilly as if he had originated the defamation. His only defence in a civil suit is to shew the truth of the charges preferred, and not the fact that others had preferred them. State v. Butman, 15 Ann. 166. In a criminal prosecution not only must the truth be proved, but that the truth was published for good motives and justifiable ends. State v. Bienvenu, not yet reported.

The word 'malice' when used in civil or criminal pleading in cases of this kind does not imply, much less mean, ill will or personal malice. Its legal sense is a wrongful act done without just cause or excuse. Malice is an imputation of the law from the false and injurious nature of the charge, and differs from actual malice or ill will, which latter may be proved to enhance the damages. Legal malice need not be proved. The law imputes it to the publisher of a libel from the act of publication.

Any publication which is false and defamatory subjects the publisher to damages in favour of the party aggrieved—printed or written slander being justly considered more pernicious than verbal. The law holds the publisher responsible as the instrument used for the dissemination of calumny whereby the character of any one may be blasted, or his business injured, or his social standing impaired. And it is not incumbent on the party assailed by falsehood and defamation to shew malice against himself on the part of the publisher, nor to prove that he has been injured by the publication. Perret v. N. O. Times, 25 Ann. 170.

The offensive publication was a cartoon wherein the defendant was represented as a trickster manipulating the city council in the interests of the railroads of which he is president, and the letter-press attributes

to him bribery. It was well calculated to excite indignation in him at the outrage, and indignation against him in the community. Few things could be more galling to a high-minded and honorable man, and the plaintiff's own witnesses are unanimous in placing the defendant in that category. The prosecution of the plaintiff by him for this publication had therefore probable cause, and malice in the plaintiff is implied. Malice in the defendant in instituting the prosecution is conspicuously absent. He was ready to become bail for the plaintiff if the Recorder had committed him.

The discharge of the plaintiff does not prove want of probable cause for the prosecution, nor malice in the prosecutor. Godfrey v. Soniat, 33 Ann. 915; Vinas vs Merch. Ins. Co. Ibid., 1266. It is clear therefore that the plaintiff is without solid basis for his action for damages. He had voluntarily placed himself in a position where the enginery of the criminal law might be invoked against him. He is presumed to know that the law of this State denounces the punishment of fine and imprisonment against whoever maliciously defames any person by making, writing, publishing, or causing to be published any manner of libel. Rev. Stats. sec. 3643. No harshness was used save that which is inseparable from a formal arrest. He was detained an hour before the Recorder. His pecuniary losses are thirty dollars lawyer's fee for defending him there, and twenty-five for costs here. The incurring these losses was the necessary outcome of his violation of the law in the first instance, and of his present futile effort to invoke the law against one whom he has injured. He can have no redress because he has no injury to be redressed. Actions of this sort have never been favoured, and in order to sustain them a clear case must be established, when the forms of justice have been perverted to the gratification of private malice and the wilful oppression of the innocent. Laville v. Biguenaud, 15 Ann. 605.

It follows as an inevitable consequence that the defendant is entitled to redress. If the plaintiff has published a libel of him, or to use the ordinary non-legal language, has sold, distributed and circulated a newspaper which contained a representation of the defendant in picture and printing which exposed him to obloquy, or which had a tendency to injure him in business, or impair his social position, or degrade him in the esteem of his friends and of the public, and upon being put to the proof not a scintilla of it is even tendered to establish that it was the truth, but on the contrary his own witnesses affirm the opposite— then has the plaintiff inflicted on the defendant an injury recognised

as a legal case for satisfaction in damages. They may not be large. Circumstances may interpose to reduce them to something like nominal reparation, but the right to them is a legal corrollary from the ascertainment that the party who inflicted the injury had no justification for it.

It is a conclusive presumption of law that damage has ensued from a libellous publication, and therefore actual damage need not be proved. Tresca v. Maddox, XI Ann. 207. Lobe v. Cary, 33 Ann. 914. But damage was proved. The defendant in his testimony points out the partial injury to his business consequent thereon, but we apprehend the greater sore was the assault on his character and the attribution to him of an infamy revolting to his sense of honour.

It would have been so easy for the plaintiff to have ascertained whether the libellous cartoon was in the newspaper before selling it, and equally so to have pleaded ignorance of its contents which he failed both to plead and to prove. We will not now consider what would have been the effect had he alleged and proved ignorance. We are willing to believe under the proof that he was not actuated by ill-will or personal malice. We note the kind and extent of his business – that his salary is not large, and his share of profits from the news-stand is presumably not larger. The purposes of justice will be fulfilled by a judgment against him for fifty dollars.

It is therefore ordered and adjudged that the judgment of the lower court rejecting the plaintiff's demand is affirmed, and that the verdict of the jury disallowing the reconventional demand of the defendant is set aside and the judgment thereon is reversed, and it is now decreed that Watson Van Benthuysen have and recover of Charles E. Staub fifty dollars and his costs.